## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

# THE CHESAPEAKE AND OHIO RAILWAY COMPANY

## v.

# STATE CORPORATION COMMISSION, ET AL.

March 2, 1979.

Record No. 780850.

Present: All the Justices.

*(Joseph B. Geyer [Md.]; Aubrey R. Bowles, Jr.; Aubrey R. Bowles, III; Bowles and Bowles*, on brief), for appellant.

*(Wayne N. Smith,* on brief), for appellee.

Case submitted on briefs.

No brief or argument for Commonwealth of Virginia, appellee.

PER CURIAM.

This appeal involves an application filed with the State Corporation Commission by The Chesapeake and Ohio Railway Company for authority to substitute mobile agency service for its present full-time station agents at Ellerson, in Hanover County, and Sabot, in Goochland County. With one member dissenting, the Commission denied the application. On appeal, the sole question for decision is whether the Commission's denial is supported by evidence.

The record shows that, at present, C&O has a full-time agent at its Ellerson station, another full-time agent at its Sabot station, and a mobile agent operating from Sabot to serve stations at Maidens, Irwin, Pemberton, and Columbia. C&O proposes to furnish agency services to these areas, which are essentially rural, with one mobile agent operating under a control agent based in Richmond.

C&O does not provide passenger service at any of the affected stations. Freight is handled only in carload lots, except for limited less-than-carload interstate shipments which must be loaded or unloaded in the same manner as carload lots.

Freight service at Ellerson consists almost entirely of inbound shipments, with one firm as the principal patron. At Sabot, outbound shipments by one patron predominate. Freight is loaded or unloaded by the patron, not at a station building, but onto or from rail cars placed on a public delivery track or the patron's private siding. The presence of a rail agent is not required in the loading or unloading of cars. The agent becomes involved when needed to place orders for empty cars, execute bills of lading, give notice of shipment arrivals, inspect damaged shipments, and accept damage claims. These duties require a minimal amount of time "per carload shipment," and they need not be performed in the agent's office.

The three agents presently serving the affected areas have insufficient work to occupy their time; together, they spend a total of only six hours and twenty minutes per day of productive agency time. Under C&O's proposal, with its attendant consolidation of functions, agency services could be handled by the mobile agent, assisted by the control agent, in a total of five hours daily, including travel time.

C&O proposes that, each workday, the mobile agent will travel from Richmond to serve patrons in the affected areas. En route, he will maintain telephonic contact with the control agent, to whom patrons may call toll free to request service. Carrying with him necessary forms, tariffs, and equipment, the mobile agent will serve the patrons at their places of business or elsewhere, as circumstances require.

C&O's regional superintendent for station operations expressed the opinion that there is no public need for a full-time agent at either Ellerson or Sabot. The witness opined further that the proposed mobile agency concept will not only provide more efficient and more convenient service to C&O's patrons but also fully satisfy every public need and demand in the affected areas.

Although C&O had twice informed its patrons of the proposed modifications in service, no patron appeared in opposition to C&O's application. A member of the House of Delegates, in whose legislative district Ellerson is located, did appear in opposition. He expressed both the concern of "several" of his "business constituents . . . about this change" and his own belief that the proposal

would result in "a serious deterioration of service," discourage the location of new businesses in the area, and inhibit economic growth. The witness was "surprised," however, at the failure of his concerned constituents to appear at the hearing below.

Also appearing in opposition were the Board of Supervisors of Goochland County, through its counsel, and the Brotherhood of Railway and Airline Clerks, through the director of its legislative committee. Counsel for the Board expressed his client's feeling that continuation of the station agent at Sabot was necessary to provide Goochland shippers a direct, local contact with the railway. The union representative merely stated his belief that the mobile agent would be unable to travel the required distance in the time estimated by C&O.

We believe that the disposition of this case is controlled by our decision in *N & W Ry. Co.* v. *Corporation Com.*, 215 Va. 214, 207 S.E.2d 883 (1974). There, we reversed the Commission's denial of a similar application to substitute mobile agency service for a full-time station agent. Pointing out that the Commission "may require a railroad to render only such service as is 'reasonable and just,'" 215 Va. at 218, 207 S.E.2d at 886, we said that mobile agency service "should be encouraged in order to promote efficiency in rail carrier operations where . . . the record shows that the public convenience and necessity will be reasonably met by such service." 215 Va. at 221, 207 S.E.2d at 888.

The Commission argues, however, that the *N&W* case is distinguishable because operation of the agency station there involved resulted in a loss on each car loaded at the station. Here, the Commission says, C&O "presented no evidence of financial loss attributable to the Sabot and Ellerson agencies."

It is true that C&O offered no evidence of financial loss resulting from the Sabot and Ellerson operations. But we do not believe that the presence or absence of financial loss was determinative of the question before the Commission. In a proper case, the Commission may require a railroad to render a particular service at a loss if a reduction in service would be "contrary to the public convenience and necessity." *N & W Ry. Co.* v. *Corporation Com.*, *supra*, 215 Va. at 218, 207 S.E.2d at 886. On the other hand, even though the current rendition of a particular service may not result in loss, if the service can be rendered in a different but substantially more economical manner without adverse effect upon the public interest, it is unreasonable and unjust to require continuation of the current method.

■ Here, the record clearly, if not conclusively, demonstrates that C&O's proposal for mobile agency service, accompanied by a consolidation of functions and the elimination of the cost of maintaining station buildings, will not only result in substantial savings but also provide adequate protection of the public interest. We agree, therefore, with the dissenting Commissioner's conclusion that C&O should have been permitted to implement its mobile agency proposal "as a means of eliminating, or substantially reducing, wasteful agency service costs without lowering the standard of service to the shipping public."

Because the Commission's denial of C&O's application is unsupported by evidence, the order appealed from will be reversed. The case will be remanded for further proceedings not inconsistent with the views expressed in this opinion.

*Reversed and remanded.*